GARY M. RESTAINO
United States Attorney
District of Arizona
JOSEPH BOZDECH
California State Bar Number 303453
Assistant United States Attorney
Two Renaissance Square
40 North Central Avenue, Suite 1800
Phoenix, Arizona 85004-4408
Telephone: (602) 514-7500
Email: joseph.bozdech@usdoj.gov
Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br><br>　　　　　Plaintiff,<br><br>v.<br><br>$10,000.00 in United States Currency,<br><br>　　　　　Defendant *In Rem*. | **VERIFIED COMPLAINT FOR FORFEITURE *IN REM*** |

Plaintiff United States of America brings this Complaint and alleges as follows in accordance with Rule G(2) of the Federal Rules of Civil Procedure, Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions (the "Supplemental Rules"):

**NATURE OF THE ACTION**

1. This is a civil action in rem, brought to enforce the provision of 21 U.S.C. § 881(a)(6) for the forfeiture of United States currency which represents money or other things of value furnished or intended to be furnished in exchange for a controlled substance, proceeds traceable to such an exchange, and money used or intended to be used to facilitate a violation of Title II of the Controlled Substances Act, 21 U.S.C. §§ 801, et seq.

2. This is a civil action in rem, brought to enforce the provision of 18 U.S.C. § 981(a)(1)(C) for the forfeiture of United States currency which constitutes or is derived

from proceeds traceable to a violation of a specified unlawful activity, including but not limited to dealing in a controlled substance and 18 U.S.C. § 1952, travel in interstate commerce with the intent to distribute proceeds of unlawful activity as defined in 18 U.S.C. §§ 1952, 1956(c)(7), and 1961. Venue and jurisdiction in Arizona are based upon 21 U.S.C. § 881(j) and 28 U.S.C. §§ 1355(b) and 1395 as acts and omissions occurred in the District of Arizona that give rise to this forfeiture action. This Court has jurisdiction. 28 U.S.C. §§ 1345 and 1355; 18 U.S.C. § 981(h).

## THE DEFENDANT *IN REM*

3. The defendant consists of $10,000.00 in United States currency ("defendant property") seized on April 27, 2023. The defendant property is currently in the custody of the United States Postal Inspection Service ("USPIS").

## FACTS

### *Suspicious Parcel*

4. On April 26, 2023, Postal Inspectors and Task Force Officers ("Inspectors") of the United States Postal Inspection Service at the Phoenix Processing and Distribution Center at 4949 E. Van Buren, Phoenix, AZ 85026, identified a suspicious United States Postal Service ("USPS") Priority Mail Express parcel bearing USPS tracking number EJ 941 694 916 US (the "subject parcel"). The subject parcel was addressed to "Josh Luptak, 2615 E Danbury Rd, Pheonix, AZ 85032" with a return address of "Brandon Mixell, 609 10th Ave N, St. Cloud, MN 56303."

5. A records search revealed that Josh Luptak ("Luptak") was associated with the recipient address and Brandon Mixell ("Mixell") was associated with the return address.

6. The subject parcel was a brown cardboard box that measured 16" x 9" x 3". It weighed approximately 2 lbs., 10 oz., had $97.40 in postage affixed to it, and the label was handwritten.

7. Persons transporting drugs or drug proceeds often:

2

     a.     Use a different return address zip code on a parcel's label than the actual mailing zip code to avoid detection by law enforcement;

     b.     Handwrite labels instead of the printed labels used by most legitimate businesses;

     c.     Misspell street address names; and

     d.     Waive the signature required option, helping the recipient to avoid detection by law enforcement.

8. The subject parcel was shown to have all four of these suspicious indicators listed above.

9. Drug traffickers often use the U.S. Mail to transport controlled substances and currency derived from the sale of controlled substances. Traffickers are aware that Priority Mail and Priority Express Mail are protected against inspection without a federal search warrant, can be tracked, have dispatch times and locations that can be controlled, and most importantly have standardized delivery schedules. Traffickers also are aware that delayed delivery of Express Mail is an indication that the mailing may have been compromised by law enforcement.

### *Telephone calls to Luptak and Mixell*

10. On April 26, 2023, an Inspector called the phone number Mixell provided on the subject parcel and left him a voice mail. A law enforcement records check confirmed that Mixell was associated with the phone number.

11. A short time later an individual who identified himself as Luptak called the Inspector back.

12. The Inspector identified herself and explained that she was calling regarding the subject parcel. Luptak stated he owned a network of smoke shops and had a friend take money from a safe in Luptak's Minnesota shop and send it to Luptak. Luptak directed his friend to mail the cash rather than go to a bank because Luptak wanted to avoid paying taxes on the money. Luptak stated he "looked it up" and since it's not illegal to send money, he was okay with it.

13. Luptak stated he owned houses in both Minnesota and Arizona.

14. The Inspector informed Luptak that she would be investigating the subject parcel further.

15. An Inspector left a voice mail for Mixell regarding the subject parcel at the number he provided. As of today, Mixell has not responded.

*Narcotics Canine Alert*

16. On April 26 2023, Inspectors met with Peoria Police Department Canine Handler/Detective Kevin Vanderwood ("Vanderwood") and his narcotics detection canine "Eero" at the Phoenix Processing and Distribution Center.

17. Vanderwood has been a canine handler since August 2009 and is currently assigned to work with Eero. Eero is a four-year old German Wirehare Pointer who has been working narcotics detection for the Peoria Police Department since March 2022.

18. Eero and Vanderwood currently hold a national certification in narcotics detection given by the National Narcotic's Detector Dog Association ("NNDDA"). Eero was last certified by the NNDDA in March 2023.

19. Eero is trained to detect the odors of cocaine, marijuana, heroin, methamphetamine, and their derivatives. Eero is a sophisticated drug dog. *See United States v. $132,245.00 in U.S. Currency,* 764 F.3d 1055, 1059 (9th Cir. 2014).

20. Eero has been trained to positively alert to the odors of narcotics, and/or currency, notes, documents or evidence bearing the presence of these odors, by sitting next to an item containing these odors and staring at his handler. This is a "passive" alert.

21. Since working at the Peoria Police Department Eero has had no less than 200 successful finds (both training finds and finds which have contributed to active investigations) of controlled substances and/or the proceeds from the sales of controlled substances.

22. Vanderwood utilized a large storage room to conduct the examination. The room consisted of three desks, office electronics, and pallets or cardboard boxes. Prior to

placing the subject parcel in the room, Eero sniffed and proofed the room to check for the odor of drugs that may have been placed there prior to their arrival. Eero gave no alerts.

23. After completing the proof of the room, Eero and Vanderwood left the room and Agents placed the subject parcel in it. Vanderwood did not know the location of the subject parcel.

24. After the subject parcel was placed in the room, Vanderwood and Eero re-entered the room and Eero was given the command to search. Eero soon found and sniffed the corner of the subject parcel, his breathing became slow and deep and his movements rigid and focused. Eero alerted to the subject parcel by sitting by it and staring at Vanderwood. Vanderwood recognized Eero's behavior as a passive alert to the subject parcel.

### *Search of the Subject Parcel*

25. On April 26, 2023, Inspectors asked for a federal search warrant on the subject parcel and on April 27, 2023, Inspectors received and executed the warrant.

26. Inside of the subject parcel was found crumpled tissue paper used as package filler, a small brown cardboard box addressed to "Taylor Mixell 609 10th Ave. N. Stcloud Minnesota 53030", and a gift-wrapped package that said "Happy 16th Bday Josh Luptak 2615 E Danbury rd Phoenix AZ 85032" on it.

27. Inside of the small brown box to Mixell were found three small glass drug pipes. Inside of the gift-wrapped package to Luptak was a vacuum-sealed bag that contained a Holy Bible. Inside of the Holy Bible were rubber-banded bundles of U.S. currency totaling $10,000 ("defendant property").

28. The defendant property consisted of 100 $50 bills and 250 $20 bills.

29. The most common denomination used in drug transactions is the $20 bill.

30. People transporting drugs or drug proceeds in parcels often secrete or conceal drugs or drug proceeds within tightly-wrapped or vacuum-sealed bundles found in newspapers, books, or magazines. Drug traffickers package items in this manner to avoid detection by trained narcotics canines.

31. When a legitimate business sends currency, or a private party sends a personal gift of currency, the money typically is accompanied with notes, letters, receipts, cards, or coupons. The overwhelming majority of people conducting a business transaction find it much more reasonable, practical, and safe to use a financial institution when making payments. Such payments are made securely in the form of a wire transfer, a check, a money order, or a cashier's check. By contrast, a payment made by mail with cash is much less secure because it can be lost or stolen, leaving no recourse for the parties involved. Drug traffickers often mail cash, constituting proceeds of their illegal conduct, to avoid creating any banking or wire transfer records that would lead to their detection.

### *Additional Investigation*

32. A criminal history check of the recipient Luptak revealed the following drug-related arrests:

    a. February 2, 2017 – Drugs 5th degree amended to drugs 5th degree – sale marijuana mixture except small amount of marijuana with no remuneration (guilty) and drugs 3rd degree and drugs 5th degree possess schedule 1, 2, 3, 4 not small marijuana (disposition unknown).

33. A criminal history check of the sender Mixell revealed the following arrests:

    a. December 15, 2018 – Traffic – DWI – Operate Motor Vehicle Under Influence of Alcohol; Traffic – DWI – Second Degree Driving While Impaired; Traffic – Underage drinking and driving; Driver's Licenses – Display/Possess Fictitious;

    b. March 28, 2019 – Traffic – DWI – Operate Motor Vehicle Under Influence of Alcohol; Traffic – DWI – Operate Motor Vehicle – Alcohol Concentration 0.08 Within 2 hours; Traffic – Underage drinking and driving; Liquor – Possession by person under 21; Drivers' Licenses – Display/Possess Fictitious or Fraudulently

Altered DL or MN ID (sentenced to 2 years' probation for Traffic – DWI – Operate Motor Vehicle – Alcohol Concentration 0.08 Within 2 hours)

34. Drug traffickers often have criminal histories involving drugs or associate with persons who have criminal histories involving drugs or other crimes.

35. Postal business records also revealed four prior suspicious mailings that originated in Minnesota and were delivered to the subject address between August 2022 and March 2023. The mailings were not intercepted by law enforcement but are believed to have contained narcotics proceeds based on similar characteristics: origin, destination, address information, size, and weight.

36. Records from the Arizona Department of Economic Security showed that Luptak has never had any reported income in Arizona.

### *Administrative Claim by Luptak*

37. On June 20, 2023, the United States Postal Inspection Service received an administrative claim from Luptak.

38. The claim was filed by Luptak's attorney Jacek W. Lentz ("Lentz").

39. In the claim Lentz said Luptak was the owner of the defendant property.

40. Lentz also stated "Relevant documents will be provided at a later time, if found."

41. On June 26, 2023, the United States Postal Inspection Service ("USPIS") requested the following information and documents from Luptak:

   a. What is your relationship to Brandon Mixell?
   b. Provide written documentation (promissory note, emails, text messages, etc.) regarding the money being sent to you;
   c. How much money were you expecting?
   d. What was the intended purpose of the money?
   e. Explain why currency belonging to you was in the possession of Brandon Mixell;

7

  f. Explain why cash was mailed instead of a financial instrument or wire transfer;

  g. Provide documentation regarding the source of the currency; business and personal bank statements for the last six months and documentation showing withdrawal of the funds prior to mailing;

  h. Provide filed federal tax returns; business and personal for the tax year 2022;

  i. Have you received any other Priority Mail Express items from Brandon Mixell or anyone else in Minnesota? If so, what was the nature of those mailings and what did they contain?

  j. Have you ever been arrested for drug violations? If so, what was the disposition of the arrest(s)?

  k. Provide a written statement, sworn to under the penalty of perjury from the sender of the subject parcel, Brandon Mixell. The statement should describe his role in the mailing of the parcel containing the seized currency, including explanations for the following:

    i. Explain why cash was mailed instead of a financial instrument or wire transfer;

    ii. Explain the manner in which the currency was packaged, including why the parcel did not contain any identification or documentation;

    iii. Explain the reason he utilized the "waiver of signature" service for a parcel containing $10,000.00 in cash;

    iv. Explain why Brandon Mixell did not file a Claim or submit a Petition for currency he mailed;

    v. Provide filed Federal income tax returns (from Brandon Mixell); business and personal, for the year 2022;

      vi.     Provide documentation regarding the source of the currency (from Brandon Mixell); business and personal bank statements for the last six months and documentation showing withdrawal of the funds prior to mailing; and

      vii.    Provide a current telephone number for Brandon Mixell where he can be reached during normal business hours, in the event it is necessary for Postal Inspectors to interview him regarding the mailing of the subject parcel.

  l.    The requested documentation and information will only be considered in the decision process regarding your Claim and Petition if it is received within ten days of your receipt of this letter. As noted, it may be necessary to interview you with respect to the claims made in your Claim and Petition.

42. As of today, the above-listed information has not been provided to the USPIS.

43. On June 21, 2023, the USPIS referred the administrative claim to the United States Attorney's Office for potential judicial forfeiture.

*Summary*

44. The following are some of the factors that show the defendant property was the proceeds of drug trafficking, was involved in drug trafficking and money laundering, and facilitated drug trafficking:

  a.    The suspicious nature of the subject parcel (use of a different return address zip code on the parcel's label, handwritten label, misspelled street address, and waiver of signature required option);

  b.    The alert to the subject parcel by a trained narcotics canine;

  c.    The large number of $20 bills;

      d.      The suspicious nature of the subject parcel's contents (large amount of currency concealed in a shrink-wrapped book with no instructions, notes, or receipts);

      e.      The prior four similarly suspicious packages sent to the recipient's address during an eight-month period from the same origination point;

      f.      No reported income for Luptak in the state of Arizona; and

      g.      Luptak and Mixell's criminal history.

## FIRST CLAIM FOR RELIEF

Based on the aforementioned facts and circumstances, the defendant property was furnished or intended to be furnished by a person in exchange for a controlled substance or listed chemical in violation of Title II of the Controlled Substances Act, 21 U.S.C. § 801, *et seq.*, or constitutes proceeds traceable to such an exchange, or was used or intended to be used to facilitate a violation of Title II of the Controlled Substances Act, 21 U.S.C. § 801 *et seq.*, and therefore is subject to forfeiture to the United States pursuant to 21 U.S.C. § 981(a)(1)(A).

## SECOND CLAIM FOR RELIEF

The defendant property constitutes or is derived from proceeds traceable to some form of specified unlawful activity, conducted and attempted to conduct a financial transaction, i.e., the movement of the proceeds of trafficking in controlled substances in violation of 18 U.S.C. § 1952, and therefore is subject to forfeiture to the United States pursuant to 18 U.S.C. § 981(a)(1)(C).

## PRAYER FOR RELIEF

WHEREFORE, the United States of America prays that process issue for an arrest warrant *in rem* issue for the arrest of the defendant property; that due notice be given to all parties to appear and show cause why the forfeiture should not be decreed; that judgment be entered declaring the defendant property be forfeited to the United States of America for disposition according to law; and that the United States of America be granted such

other and further relief as this Court deems just and proper, together with the costs and disbursements of this action.

       Respectfully submitted this 18th day of September, 2023.

                              GARY M. RESTAINO
                              United States Attorney
                              District of Arizona

                              *S/Joseph Bozdech*
                              JOSEPH BOZDECH
                              Assistant United States Attorney